No particular direction, I'm sure, needed to be given to experienced advocates, but just a reminder, which is to watch our lighting system there on the podium. Certainly, when the red light comes on, finish answering any question that you may be answering. Don't ask for permission, but don't start a new line of argument at that time. First case of the day, Halstead Bead v. Kevin Richards and others. 22-30373, Mr. Martinez. May it please the Court, I am Tyler Martinez, counsel for Halstead Bead, a family-owned and operated business in Arizona. Louisiana has one of the most complicated and difficult sales tax systems in the country, and Halstead cannot bear the burden of trying to comply with trying to how to pay into that system. But we never got to the merits of this case, because the district court found that the Tax Injunction Act and related comity apply. This is error. Halstead should have its day in court. I'll agree that the TIA contains two tests, both of which must be satisfied before the jurisdictional bar applies. If either test fails, Halstead gets its day in federal court. First, the Tax Injunction Act only bars cases that seek to enjoin the assessment, levy, or collection of a state tax. Those terms are narrowly defined by the Supreme Court in a trio of recent cases and don't apply here. Because Halstead wants to pay the tax. They want to collect the sales taxes and remit them to whoever they're due, whether it's the state or the parishes. It's how to pay that's the problem. It's how to get into that system. Second, the Tax Injunction Act only applies where a plain, speedy, and efficient remedy may be had in the courts of the state. But Louisiana law requires suits for refunds to get into the state court. There is no state forum for Halstead to bring its challenge. Without federal court jurisdiction, no one will hear this case. So let's take each in turn. This is not a challenge to the assessment, levy, or collection of a state. Assessment, levy, and collection are most clearly defined in the direct marketing case we cited. Direct marketing at page 9 of that opinion says that assessment means the official recording of the taxpayer's liability. Collection means the act of obtaining payment of taxes due, the actual payment of handing over the money to the government. And levy, which doesn't apply here, is when somebody owes a lot of taxes and it's the government trying to collect under which the state detains and seizes a taxpayer's property in order to collect a debt owed. Mr. Montanus, to make sure I understand this part of your argument, you go through your understanding of the meaning of these terms, levy, collect, assess, and that you're challenging something other than that. Maybe, maybe not, but the relief you're seeking would stop the collection of this, wouldn't it? I mean, the relief in your complaint, you have declaratory judgment relief, but you also have injunctive relief, permanently enjoined these defendants from enforcing local sales and use tax legislation, permanently enjoined defendants from other things. It seems to me you would stop the collection of these taxes, enjoin them. So regardless of what you say is just a piece of the overall legislation that you're attacking, you still would, the effect of this would be to enjoin the assessment collection of taxes. Your Honor, more precisely, the relief sought is to enjoin the application of the constitutional provision that protects only parishes from being able to collect local and sales taxes. The issue is not paying at all, but rather than the fact that it's all decentralized. But don't we look at the relief that you request in order to figure out if a tax injunction act applies? Not just some theory of what's wrong, but what is the effect of this litigation? And the effect of this litigation would be to enjoin the, I'm not sure, all of it, maybe assessments would still be added, but you'd certainly be enjoining the assessment of taxes until some better approach is adopted. Well, there's two things that are going on. First, there is a framework that exists for trying to collect decentralized taxes, but for the Constitution. And second of all, which was dispositive in the direct marketing case, which is similar on facts. That was a case that was challenging Colorado's sales tax system, and whether some registration or reporting requirements. The government made the same argument saying, well, it'll eventually get to stopping collection, and the court- This isn't eventual. This is the court action itself. It's not just information gathering. This is the actual collection this lawsuit would address, yes? No, Your Honor, because, and for the other reason, which is there's a use tax, which is dispositive in the direct marketing case. The district court here found that the use tax didn't exist, but there is a use tax in Louisiana. And so the individuals who buy items and bring it into the state would still be required to pay the use tax. But beyond that, Halstead doesn't care how much is owed, but rather than the system itself. And the legislature, and there's been attempts to try and create such a centralized system. And the framework is there. It just doesn't have any meat to it because of the constitutional provision. Proceed. The issue for Halstead is that there's duplicated register. What precisely did you ask the district court to do? Well, we asked the district court, all of our prayers for early relief are on record, page 36. There's broad relief asked for, as any good lawyer does, and then narrow relief. So it goes from broad to narrow. The narrow relief is a declaration as applied to the activity of Halstead Bede. That's paragraph D as in delta. Tell me what you asked for. What do you want them to do? We want a declaration that the constitutional provision that protects only the parishes from collecting sales and use taxes. The thing that makes everything hyperlocal. The thing that creates the complexity to be unconstitutional as applied under the commerce clause and the due process clause. But the upshot of the declaration you're seeking is to suspend all local sales tax collection. Not all sales tax collection. We asked for we asked for broad relief, but also for as applied to Halstead or as applied to out-of-state sellers. They could still collect from somebody who's in Baton Rouge. They can still collect from somebody who's in New Orleans, somebody with physical presence like an Amazon or a Walmart. They can still collect from those sort of people. It's the small business catalog sellers like Halstead that would be protected under that. It would nullify the rates and the exemptions that are set by local tax authorities. It would not necessarily nullify. The problem is not that they have different rates or whatever. It's that no one can figure out what those rates are because there's not a central collection system. In South Dakota versus Wayfair, when the Supreme Court approved having interstate commerce be allowed to have sales tax collection, the Supreme Court said that there were certain guardrails. And one of the most important ones was one centralized person, which would in this case probably be Secretary Richard, who heads up the Department of Revenue. That's how South Dakota does it. That's how Mississippi does it. That's how all the other states do it. Louisiana just does not. Why don't you shift gears to the plain, speedy, and efficient remedy part of your argument? Yes, Your Honor. The district court found that Halstead was not a taxpayer. There's some sales taxes weird in that the business is the one that's paying on behalf of the state. They take the sales tax from the consumer, the person who bought the item, and they hold it, and then they give it to the state, or the parishes in this case as well. The problem is that Halstead doesn't care what the rate is. This isn't the standard tax case where somebody says, oh, well, the rate should be 5.5% instead of 6%. If that were the issue, then suits for refund could be had. And that's what Louisiana law requires. In fact, the constitutional provision that we challenged was Louisiana Constitution Article 7, Section 3. 3B is all the things that the parishes can do. But 3A says the legislator shall prohibit the issuance of process to restrain the collection of any tax. So it's like a mini tax injunction act. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer. That's on page 15 of our brief that we reproduced. Counsel, you're more familiar with your opponent's arguments than I have. They talk about, you're focusing on the wrong statutes. And they're entirely different statutes that allow an efficient state remedy for same part of the code, but 1407 and some parts of it, or declaratory action generally. So help me, why isn't it correct that you're focusing on the wrong statutes that indeed would not allow the suit to proceed without absent paying and seeking a refund? Instead, they're entirely separate statutes that don't require that. So Section 1407 is jurisdiction for the Board of Tax Appeals. The Board of Tax Appeals doesn't get jurisdiction until somebody asks for a refund, pays under protest and asks for a refund. That was decided just recently in the United Parcel Service, UPS, the delivery people. The UPS case literally said that they couldn't issue these declaratory relief until they had jurisdiction. The issue isn't that- This case you cite in your briefing? Yes. It has a Westlaw site because it's not reported because it's the Board of Tax Appeals. But yes, that case says that the Board doesn't have jurisdiction until then. Not only does the Board say that, in Bridges v. Smith, which we also cited in our briefing, the Court of Appeals in 2002, the State Court of Appeals in 2002, said the same thing. The only way you can get into court is for a suit for refund. In Jazz Casino, the Louisiana Supreme Court walks through all the relief that's available under this constitutional provision, and they're all monetary damages. They're all refunds and the like. There is no declaratory relief. There is no injunctive relief. Now, the district court found otherwise under Article 1872 by pulling cases from the 1970s and 1980s. And if you read those cases, the federal district court said there might be a declaratory relief under this general civil code section under a quote. And in both times, the same judge used the word implicit. It's implicit in 1872 that there could be declaratory relief. Implicit is just not plain. And if the standard is plain, speedy, and efficient, implicit is not plain if you have to pull from district court cases from the 70s and 80s. That is, that's the problem. So as a result, those cases are highly distinguishable on their facts. And on top of that, ERA Helicopters and Archers Daniels Midland were both companies that had physical presence in the state. That matters because, unlike Halstead, they could always have to collect sales tax even now, because physical presence is a different test than a catalog supplier who just sends things in the mail to people into the state. So without a state forum, and certainly not a plain one, there's nowhere for Halstead to bring this case. Why can't you go to the Board of Tax Appeals? I don't understand why that's an insufficient forum. So the Board of Tax Appeals, again, in the UPS case, which was announced right before we filed, in fact, our complaint, says they only have jurisdiction once somebody seeks a refund. That's the Jackson case you cite? That's the UPS case, the United Parts of Service case. That's the court, that's the Board of- You said Jackson v. City of New Orleans? Jackson v. City of New Orleans also talks about for the state forum as a state court. So Jackson is about state courts, and you can only get into state courts if you seek a refund. Bridges v. Smith is the one that was also talking about the Board of Tax Appeals jurisdiction. So we have an appellate court decision in Bridges and the board itself, both saying that they do not have jurisdiction until somebody is seeking a refund. And that's just not Halstead's injury here. Halstead wants to pay. It's just that they cannot engage in this- So you're challenging the regulation and not the taxes, correct? Correct. But the BTA, the Board of Tax Appeals, can adjudicate, quote, the validity of a regulation, unquote. But to get jurisdiction into the Board of Tax Appeals, you have to be seeking a refund first. That's the problem. It's that first step. If we could get into the Board of Tax Appeals, that would be a different case. But because we are not seeking a refund, and nor does Halstead want to, Halstead wants to pay everything that is due and wants to pay even more as they make more sales. The fact that they have to throttle their sales is a pain for them that they shouldn't have to bear. Was the UPS case a payment under protest case? It was not, and that was why it was kicked until they did pay under protest. But there was no- Halstead can't say, well, we don't think it doesn't belong in Washington, Paris, whatever rate that is. They agree that sales taxes are due. That's the law, that they're not even saying- Like, Wayfair is a perfectly good law that Halstead actually supports. It makes good economic sense. But they cannot be able to engage in that system. And it's not just Halstead saying this. You saw this from AMICI as well. You saw the National Federation of Independent Businesses, the Oklahoma Chamber of Commerce, this state's Chamber of Commerce all said that this is the most complicated system we have. We collected in our opening brief the writings of a bunch of experts in this field, and they all say this system is just unbearable for businesses to handle. And for that reason, we ask that you please reverse the District Court and give Kelsen its day in court. All right, Counselor. Your Honors, good morning. May it please the Court. I'm Patrick Amity on behalf of Amanda Gragne, who is the Lafourche Parish collector, but I'm also arguing on behalf of the other collectors, Jamie Butts and Donna Drude of Washington at Tangivaho Parishes and those parishes. We were tempted to cut and paste Judge Malazzo's reasons as our appellate brief, but we really thought it was eloquent and well stated. As of February 23rd, 2023, as reported by the Louisiana Remote Sellers Commission at its March meeting, the commission had collected a total of $1.138 billion in state and local sales taxes as collected and remitted by over 8,125 remote sellers in Louisiana, businesses outside of Louisiana that had registered and were now collecting and remitting on behalf of the state. The latest details reporting these figures are all public record, and these taxes represent collections on $11 billion in remote sales, roughly. These over 8,000 remote sellers are doing exactly what Halstead claims is too complicated and impossible to do with our convoluted tax structure. Halstead's claims have morphed and pivoted a bit since the suit was filed. They originally claimed and sought to enjoin the parishes from forcing them to register and remit individual returns at the parishes, which would have totaled over 700 returns according to their petition. Of course, they didn't reference the Remote Sellers Commission, which was created in 2018 by the Louisiana Legislature, which was the centralized collection agency, a state agency under the Department of Revenue, that collects on behalf of the state and local governments a one-stop shop. You register one time and you file 12 returns annually, once every month. Halstead has no physical location in Louisiana, and at this point, they don't meet the threshold definition to fall under the regulations of Louisiana that require dealers to take certain actions on behalf of the Louisiana collectors. Remember that at this point, remote sellers don't become or fall under the definition of dealers until they reach the threshold of $100,000 of sales from Louisiana customers. Louisiana customers are paying the tax, not Halstead. What Halstead is attacking has posed somewhat of a moving target. We think their challenge seeks to enjoin or declare unconstitutional virtually all of the provisions related to sales tax that grant taxing authority to local governments. Halstead does not attack or seek declared unconstitutional. That particular law, as you can tell, they just don't like the way we did it in our constitution and have done it for the past 75 to 100 years. They attack Louisiana's sales tax structure in its entirety. I would just briefly like to tell you, historically, Louisiana determined to finance local government, perhaps differently than other states. We allow school boards to levy sales taxes. Levy and drainage districts, we have unique features in Louisiana. I am lucky enough to represent the North Lafourche Levy District. And they happen to be, this district is outside of federal protection, federal hurricane protection levy. The Louisiana legislature in 1990 created the North Lafourche Levy District. And they were allowed to assess property taxes, which is ad valorem, and sales taxes, which is a, and of course it had to be approved by a vote of the people. But the folks of Lafourche voted to tax themselves so that they could better provide for levies and for hurricane protection, essentially. Yes, sir. I appreciate your background to us, and you are getting to some extent in the merits of legitimacy of doing it this way. But could you address the two issues that were raised? I certainly can, and I'm prepared to do that. How far are we on the understanding of Louisiana statutes on whether there's a sufficient remedy under state law? And then preliminary to that, even whether the tax injunction acts or lies. So the question is, does granting relief result in the court enjoining, suspending, or restraining the assessment, levy, or collection of taxes in Louisiana? The statutes that impose obligations on the dealers once they reach this $100,000 threshold of sales, essentially starts with 47304 subpart A. And what it says is that the taxes levied in this chapter shall be collected by the dealer from the purchaser or consumer. That imposes a responsibility on the dealer directly and it involves directly the collection activity of the RSC, the Remote Seller Commission provisions that are found in 47340, require remote sellers meeting the sales threshold to register with the Remote Sellers Commission, require them to file monthly returns with the Remote Sellers Commission, and of course, to remit the taxes that they've collected on behalf of the state and local government. To enjoin the requirement, these requirements that the seller collect the tax, report the tax, and remit the tax, defeats the tax in its entirety. We won't collect that, we'll continue to collect the $1.1 billion we've collected thus far. We will cease to be able to do that. The object of this lawsuit is to defeat that, and I think it does satisfy the first prong, respectfully, of the Tax Injunction Act. And that's what the district court said. It said, finding that the reporting and remitting requirements are not a means to facilitate the collection of taxes in Louisiana. They are the process of collection itself. So it seems rather clear, and there's nothing more intimate than, or direct than the transfer of funds from the purchaser to the dealer who acts as agent and then holds these funds in trust and remits it by the 20th day of the following month for last month's collections. That's how it works in Louisiana. The second part that you're asking me is, is there a sufficient state remedy? We cited a case that was decided by Judge Palazzolo in the Middle District of Louisiana. He was one of my law school professors, and I got shaky legs when I read the decision. And brought back memories that some were good, I guess. But what he said in that case is- Tell us what grade you made. Pardon me? Tell us what grade you made. It was criminal procedure, and I think it was somewhere between B minus and C, I would say. So, and if I could simply touch on direct marketing. That case really doesn't apply here. That is, as Judge, you pointed out, that was information gathering. There was no requirement for the dealer to collect taxes on behalf of the state of Colorado. I think what Colorado was seeking was just, who did you sell it to? That is certainly, and we don't even ask that in Louisiana. You have to report your sales, you have to then report the taxes that are collected. Who bought it from you is not really of our concern, so long as you're collecting our taxes and you're remitting it to the Remote Sellers Commission. That wasn't a function of tax collection, according to the court. Portland Council says a statute, among others, that you refer to, 1407, so parts three, I think, and seven, don't apply. And you heard the explanation. This is the Board of Tax Appeals that we're talking about. Yes, sir. Which makes it sound like something's happened earlier and it's being appealed to the board, but that's just the name of the board, it doesn't necessarily mean that's the process. Your assertion is that an initial action can be brought in the Board of Tax Appeals on a 1407 to make the claims that are being made here. And that certainly, on the face of the statute, seems a reasonable explanation. I don't see any case law that you have that actually shows it is done that way. And I would say the reason is because this amendment to the jurisdictional provision of the statute, that being 1407, the constitutional challenge or the ability to file a declaratory judgment action on constitutional grounds didn't exist until 2019. It was permitted by Act 365 in the 2019 regular session in Louisiana. And before that- So before 2019, he would be right? No, he would be- These actions could not have been brought in the- No, what would have, excuse me, what would have happened is that- We're eager to answer, that's okay. Yeah, I know that. What would have occurred there is the Board of Tax Appeals, when faced with that issue, would have had to seek a resolution of the constitutional issue at the district court, who would then decide it and then refer it back to the BTA. So it wasn't, there was always pre-deprivation relief that has existed in Louisiana law. The Board of Tax Appeals is the post-deprivation court for, in this case, if it was an assessment. There's provisions that say you have to appeal the assessment to the Board of Tax Appeals under 47-1565. And so you have 60 days after the assessment is issued to appeal it. If it's a refund claim, what usually happens is you start your refund claim with the collector, the secretary in this case. And then if it's denied, you have a right to appeal that denial to the Board of Tax Appeals. It is the post-deprivation court of original jurisdiction. And the cases, and that would be 1625, Title 47, Section 1625. So under Louisiana law, when the remedy is provided post-deprivation, the Kinder case that they cite, Austin versus City of Kinder, Jackson versus City of New Orleans. It simply stands for the proposition that you can't thwart that process by following a separate action. If you fail to follow the remedy post-deprivation, you lose your rights, period. Now, pre-deprivation would be declaratory action. You're not under any obligation, and admittedly, Halstead isn't. Halstead's not under assessment. Halstead's not under audit. It hasn't paid any money to file a refund claim. So pre-deprivation, respectfully, we have a statute, black letter Louisiana law, directly on point that says you can file this claim. And of course, Judge Palazzolo, who I have great respect for, said back then that provision didn't exist. You got the Louisiana Declaratory Action Statute that permits it. That would be the Code of Civil Procedure, Article 1801, 1802, through, I think, 1811. So Halstead's simply not telling you the full story, that it only has the right to file a refund claim. That's their exclusive remedy. I've been doing this quite a while, and I would simply say that's preposterous. What do you make of the UPS case? What do you want us to remember about it? Yeah, it's a weird case, because what was happening at the same time that this case was being decided is the department was assessing UPS. So at the time, there were actually two cases pending on the same legal issue. So the case, I think, from our perspective, stands for the proposition that the BTA has original jurisdiction for the purpose of deciding constitutional issues now, which it didn't have before. But I think the court probably said, look, we got this assessment process that's now in process. And UPS had filed the appeal of the assessment that was before the court. And I guess it could have gone either way. I guess the court's going to get to that decision of constitutionality of whether UPS owed or didn't owe the tax. And I'll also point out to you, under Louisiana law, you don't have to pay under protest. That's an option that you have. If you've been assessed, you can pay under protest and file suit. And what that does is simply suspend the running of the ordinance interest in the case. But you can be assessed and file an appeal, and interest will continue to run, and you take your chances. So this concept that you have to pay under protest in order to get to court, again, is a misstatement of Louisiana law. I only have a few minutes or seconds left. I will tell you, as we sat around and talked about this, the attorneys representing locals, we realized that we don't really have any authority whatsoever over Halstead. We can't assess them, we can't audit them, we can't force them to file returns. All of that is with the Remote Sellers Commission. And so we wondered, well, why are we here? But actually, the reason we haven't filed anything to get out of this suit is that it involves our money. They are attacking the right of our parishes to assess or to levy, to pass taxes that allow for us to build levees, simply put. So, your honors, thank you for my time. I see I'm out of it, and I appreciate it. Thank you. Your honors, my name is Russell Stitz III on behalf of Kevin Richard, the Secretary of Revenue in this matter. And Judge Southwick, I know you asked a question to my co-counsel, Mr. Amity, about kind of honing in the issues on the TIA and comedy doctrines. And my issues don't necessarily pertain to that. There are some state-specific nuances outside of those things. But if the court is not wanting to hear those things, I'll defer them. If you think they're relevant, I'm not sure what you plan to address, but why don't you try us out? All right, your honor, thank you. First, I'll second everything Mr. Amity said, much better than I ever could. I have four small issues that I'm going to run through over the next five minutes that I think are very clear and actually address some of the questions you all asked, the court asked Mr. Martinez earlier. So first, this taxpayer does not have standing. Second, these statutes that they're complaining of do not have any applicability to the state and the LDR. Then we have issues of 11th Amendment immunity for nominal damages and attorney's fees in parts of their prayer relief against the state. And then alternatively, the state statutes are different, and the state is incorrectly joined in this matter. It's just a different system that is better dealt with in its own proceeding. First, I want to talk about these statutes. And Judge Higginbotham, I thought she asked a very good question because we're very meat and potatoes. What do you want us to do? What is the result that you're seeking? And so here we have two statutes that they've specifically cited. We have Louisiana Constitution Article 7, Section 3, and Louisiana Revised Statute 47, 337.14. What do those do? They require each collector, each local collector in the state, to designate one single collector for all of the school boards, fire districts, and all of them. So we're only going to one person for each parish. And that's A through D in their prayer for relief. We go to E through F, they're seeking to enjoin local collection efforts in reporting and remittance requirements. So that tells us two things. First, the Constitution and statutory provisions cited, those aren't talking about the state. The state is already a single collector. It already has that. That's not something that applies to us. It has nothing to do with us designating a single collector. Second, we go to, they are seeking to enjoin local. I mean, that's word for word, dude. They say local in their prayer for relief. That also has nothing to do with the state. There's simply no relief sought here that is against the state, and the state's an improper party to something that they're not really involved in at all, from what I can tell. And moving on to standing, and this does get into some of these issues. There's some overlap, but I think the Spokio decision is very helpful in terms of what are the elements of standing? We have injury in fact, an injury that is fairly traceable to the government conduct, and the injury must be redressed by a favorable decision. So first, we look at paragraph 46 of their petition. They say that they're below the de minimis threshold. They don't do $100,000 in business. They don't engage in over 200 transactions. There's no injury. They're not paying tax. They're not subject to these requirements that they're talking about today. So there's no injury by this tax, they're actually not a taxpayer at all right now. But they're challenging tax statutes. Moving on to, and I think this point is very, very important, Your Honor. So the third prong of standing requires the injury to be redressed by favorable conduct. And each judge here, asked Mr. Martinez a very pointed question on this. You talked about what is the upshot of what you're trying to do? If you unravel this system, and we go back to the statutes, right? They're seeking to have it remove the requirement of a single collector. But we look at page 26, 33 of the brief, they're not contesting the underlying assessments or the ability to collect those taxes. They still owe them, they wanna pay them. I think that's what I heard them say. So we undesignate a single collector for each parish. Now, over 700 different school boards, fire districts, different entities can now go after Halstead to collect. Their problem quite literally gets ten times worse than it is right now. So it's impossible to say that a decision in their favor by this court actually redresses the hypothetical injury that they're claiming. And I know I'm running out of time here, Your Honors, but- Anything to the opinion below? Your Honor, my issues are, standing is a little related to TIA. But no, nothing to add on top of how Judge Meloso adequately briefed those issues. Okay, so I think you've covered what I need to. Thank you. Thank you, Your Honors. Daniel Martinez for Halstead Beat again. As always, a few quick points. Let's take the easy one first. They're standing here because Halstead monitors its sales to stay below that threshold. It wants to make more sales. It wants to sell more items into the state. There's an assertion in the pleadings, or briefing at least, somewhere the figure of 39,000 is the most your client has sold. But it's restraining its sales so it doesn't get to the cap. On the question of standing, I think what restraint means seems somewhat relevant to me. Is there anything in this record that explains what your client is doing to make sure it doesn't sell too much? Yes, Your Honor. So what they do is they monitor their sales and stop. If something is going to be shipped to Louisiana, somebody asks for quality jewelry supplies. When they see that it's Louisiana and they're near that threshold, they say, sorry, refund the money. We're not going to make that sale. To me, if the evidence is correct, that 39,000 is the most that has been sold in a year, that there wasn't any need for restraint. So there's two parts of that test. There's $100,000 in gross sales, which Halstead's not anywhere close to, or 200 transactions. 200 is entirely separate. You would qualify if it's 200 regardless of amount? Regardless of amount. And these supplies are like $2 at a pop. Like gold chains sound like they're really expensive, but they're not. They're components to making other jewelry. And so you're talking about really low margins on things and for small sales to hit that 200 transaction threshold. You go on, you've got other things to cover, thank you. As far as the state not being a proper party, the state is a proper party because, well, as the secretary admits himself in note 41 of his own brief, the secretary admitted to a role in enforcement and collection. That's because the secretary, of course, collects state sales taxes. That's Louisiana revised statute 36-458. And then the parishes can contract with the secretary for enforcement, auditing, enforcement, using the long arm statute, all of that. That's Louisiana revised statute 47-337.16. And the KP LeBlanc case is a perfect example of where that has actually happened. The secretary also has audit powers and enforcement, and it's in audit enforcement that's the problem. Halstead wants to pay, but if you get the wrong rate, if you don't know what fire district A is, or fire district number one, excuse me, or road canal zone A is, if you don't know where those locations are when you're selling to a resident, that's the problem. You could accidentally give the wrong amount of money and through no fault of their own, it's a trap for the unwary. This court has asked a lot of questions, obviously, of me and of opposing counsel about where to bring this case. Does the board of tax appeals have jurisdiction or not? Is it plain? Is it not? What to do about these cases from the 1970s? I would posit that that's one, not plain. And we believe that it's not plain that that is a remedy for Halstead when Halstead doesn't care about how much there is going to be paid. They're not saying it should be 5.5% or certain items shouldn't be taxed or whatever. They're just trying to figure out how to get into the system and pay. A lot of other businesses outside the state of Louisiana navigate this system so well. Well, they were very impressed with the 7,000 people that have registered lifetime to this system. There's two issues with that. The world of- What's unique about your business? They're a catalog seller and a small business that has no physical presence. You're talking about one person who has to do HR payroll and state and local sales tax compliance. And he does so and he contracts out with companies to get help. And the company he contracts out to filed an amicus brief in this case and said, we can't figure out Louisiana taxes. Like, that's the company. He's compliant in all the other states. He has no problem paying the sales taxes in California or wherever else. The issue isn't that. The issue is that there's no one single administrator of that system. And there are- Taxes and assessment of taxes are peculiarly and uniquely the province of the state. And what the other states may do is it's their province. That's been true throughout the history of the country. That's one of the basic concerns in the original constitutional arrangement, for heaven's sake. Well, Your Honor, that's the whole reason why we have- I see that I'm out of time. So, Your Honor, that's the whole reason why we have the Constitution. You're right. Federalist 22, Federalist 42, Federalist 7, Federalist 11. They all talk about worrying about states bullying the residents of other states and interstate commerce. Those are the concerns. That's why we have multiple provisions of the Constitution protecting interstate commerce.  Thank you. Thank you, Mr. Martinez, both sides, for helping us understand this case as well as we can. We'll take it down.